## WHITE v. DOUGAL.

No. 7427. Opinion Filed July 25, 1916.

Rehearing Denied September 12, 1916.

(159 Pac. 907.)

### 1. New Trial—Sufficiency of Evidence.

It is the duty of the trial court, upon a motion for a new trial, which challenges the verdict, upon the ground that it is contrary to the evidence, to weigh the evidence and to approve or disapprove the verdict, and if the verdict is such that in the opinion of the trial court it should not be permitted to stand, and it is such that he cannot conscientiously approve it, and he believes it should have been for the opposite party, it is his duty to set it aside and grant a new trial.

### 2. New Trial—Motion—Weight of Evidence.

In passing on a motion for a new trial, it is the court, and not the jury, that must weigh and determine for itself the effect of the evidence. It cannot be said that a court approves a verdict when its reason and judgment rebel against the conclusions it expresses.

### 3. New Trial—Sufficiency of Evidence—Verdict.

Not only must the jury be satisfied of the righteousness of the conclusion to which it arrives, but, unless that conclusion meets the affirmative, considerate approval of the mind and conscience of the court, it should not, where challenged, be permitted to stand.

(Syllabus by Brunson, C.)

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by Bessie Dougal against Ewers White. There was a judgment for plaintiff, and defendant brings error. Reversed and remanded.

E. R. Hastings and Paul Van Winkle, for plaintiff in error.

E. J. Giddings, G. H. Giddings, and J. T. Dortch, for defendant in error.

Opinion by BRUNSON, C. For the sake of convenience the parties will be designated here as they were in the trial court.

The plaintiff filed her petition in the superior court of Oklahoma county on the 27th day of January, A. D. 1913. It was thereafter transferred to the district court of the same county and there filed on the 22d day of December, A. D. 1913. The petition asked that the defendant be required to respond in damages to the plaintiff in the sum of $15,000, for libel; $7,500 of that amount being for alleged injuries to her reputation and the remainder for exemplary damages. The alleged libelous statement in writing is set out in full in the petition, and it is charged, in part, in the amended petition that during the year 1911 said defendant wrote said statement of and concerning the plaintiff, who was then and is now a female of good character and reputation; that it is false, malicious, and unprivileged statement in writing; that it was intended and calculated to expose her to public contempt, obloquy, and disgrace, and that it purported to be a statement made by one Gertie Wood, a female child under the age of 14 years; that said alleged libelous statement was not

signed by any one; that it was prepared by the defendant in his office at McLoud, Okla., in the year 1911 and that thereafter and on the 10th day of November, 1912, said defendant did deliver and publish said alleged libelous statement to one Bill Grace, a resident of Pottawatomie county, state of Oklahoma, and permitted and directed him to see and read it, with libelous, false, and malicious intent on his part to injure and blast the character of the plaintiff. It is also alleged that said libelous statements are false and untrue, and that the defendant knew that they were false and untrue both before and at the time of executing the same and at the time of the publication thereof. (1) To the petition defendant answered and denied each and every allegation and averment therein contained; (2) that the matters contained in the writing were true; that if said libelous matter was published, it was done with good motives and justifiable ends, and for the enforcement of the laws, and without any improper or malicious purpose, intent, or motive, and under the direction of and in the course of an investigation then being made by the county attorney of Pottawatomie county, Okla., and his assistants and deputies, to ascertain whether or not Bessie Dougal and others had violated the criminal laws of the state in connection with any of the matters and things alleged in said libelous statement; (3) that the same was a proceeding authorized by law, and that it is and was a privileged statement; (4) that said alleged cause of action did not accrue to the plaintiff within 1 year next before and prior to the commencement of this action; and that said alleged cause of action was and is barred by the statute of limitations. To this answer the plaintiff filed a reply, in which she denied each and every affirmative allegation therein contained. In overruling the motion for a new trial the court used the following language:

"The court was impressed with the idea, at the trial, that the defendant was doing what he would desire any friend of his, or any one who was interested in his welfare or that of his family would do for him under like circumstances. Now, that was the question that was submitted to this jury—as to whether or not he was prompted by proper motives in his connection with this affair. The publication here, upon which reliance is made, is the direction to deliver this document to Bill Grace and its subsequent delivery to him. The only evidence bearing upon that question that is really material, as the court looks at it, is the testimony of Bill Grace, who swears positively to these allegations of fact, fixing, it is true, I think, the 10th day of November, 1912, as the first time that he ever saw the paper, when he got it from Mr. Myers. The defendant testified as positively that he never mentioned the matter and never had any talk with him at all that day, or any other, as I remember the evidence about the matter. If the recitals in that document were prompted by the motives which it is claimed here by the plaintiff—if they were untrue, if they were prepared—if the document was prepared at the instance of the defendant for the purpose of injuring the plaintiff, then there isn't any doubt but what the defendant ought to respond in damages in some amount, which would depend upon the character and reputation that was alleged to have been injured by these acts. Now those are the questions here.

"The only witnesses, it is true, that the plaintiff brought here to substantiate her reputation were witnesses, it seems to me, who did not know anything at all about her reputation. Their own testimony showed that they knew nothing about it. They lived four or five or six miles in the country; saw her once a month, or such a matter, when they would come to town. That sort of evidence don't establish a reputation in the community where people live and who would be likely to know what people do say, or whether they would say anything. But that was the character of the evidence upon the one side. Upon the other side was the testimony of some 15 or 20 witnesses, I think, who were examined here before the jury, in all different walks of life, official, business, social, who testified—I think I am mistaken as to the number, possibly; I know I am as to the number who testified regarding the reputation of this plaintiff as to her chastity; but there was quite a number of evidently very respectable people, business men, living in the community, and who had known her for 15 or 18 years, who said her reputation was bad in that respect. If that is true, if that was the sort of reputation she had, her reputation could not have been injured, it don't seem, very much by this publication. That is the question for the jury. That is the question for the jury, now, to say as to whether or not her reputation was such, in the community there as the defendant claims it was. It is presumed to be good to start with. The jury passed on that question.

"All of the evidence practically for the plaintiff upon the publication here is the evidence given by Bill Grace, who the jury learned had twice served as sheriff of that county, years ago, and that at that time his reputation for truth was good, but that for the last 5 or 6 years it had deteriorated to the extent that it was very bad; and I think the jury might have had reason to believe, from the testimony of these witnesses, that no reliance whatever ought to be placed in his testimony. But that was a question for this jury to pass on, as to what interest he had in the result of this litigation. What difference did it make to him? He wasn't being prosecuted for publishing it himself; he had no financial interest in it that anybody could see, at least, nothing that was

brought out here. So there was the testimony of Bill Grace upon one side, whose reputation for truth and honesty was very bad, as shown by the testimony of 15 or 20 of the best business men, apparently, and professional men and officers in that community in which he lived, without a single word from the other side, and the jury had a right to consider the fact that he apparently had no interest in the matter, except that his deposition was taken; it had to be taken; he didn't come over here to testify, but his evidence was taken by deposition there. And as against that was the testimony of the defendant alone, who, from the number of witnesses who were here, came here from an adjoining county to testify in his behalf—men of standing—the jury had a right to conclude that the defendant himself was a man of high standing in that community, and he was charged here with the publication of a most vicious attack upon the plaintiff, and, if the jury believed the claims of the plaintiff, would probably have to respond in damages for a considerable sum. He was interested in it in order to maintain his standing in that community, among the people where he lived, as well as to avoid financial liability here. That was the question for this jury to pass upon.

"Now, the duty of the court in passing upon the motion for new trial is, I think, reasonably clear. I think the court has, not only the right to grant a new trial under certain circumstances, but I think it is its duty to do it. But here the plaintiff is seeking to recover damages upon a mere act of the defendant, and the defendant evidently relied to defeat that recovery upon the fact that the witness who would be brought here to establish that fact was one that no one on earth would believe as against him, and the defendant took that chance with that jury. He put in, as I now remember, about two hours to get this jury, and they passed on that question, and it was the peculiar province of the jury to do that. I don't believe, in a cause of that kind, the court has any right to say that those men knew nothing as to the standing of these witnesses —I don't believe that the court ought to put its judgment in a matter of that kind against the jury in determining the credibility of the witnesses. It is the peculiar province of the jury to do that, and that, I think, is true, also, with reference to the reputation of the plaintiff in the case, upon the question of damages.

"I am frank to say that, if I had been hearing this case myself—if it had been before the court—I don't think that I would have reached the same conclusions that this jury reached upon the question, now, of the reputation of the witnesses, or what weight ought to be given to it; and yet I don't feel that I ought to, as I say, put that up against the other party, and say that because the jury took a different view from that which the court might have taken, the verdict ought to be set aside and this entire matter again threshed out.

"The court don't think, under the circumstances, for the reasons that I have given here, that the verdict ought to be disturbed."

There was judgment for the plaintiff for $10,000, and from said judgment the defendant prosecuted an appeal to this court.

The first assignment of error we will consider is the reasons given by the trial court for refusing to grant a new trial, and this we think is error.

It is urged that the trial court committed error and abuse of discretion in failing to sustain the defendant's motion for a new trial and in support of this assignment it is made to appear that the court, in passing upon the motion for a new trial, declined to weigh the evidence and either approve or disapprove the verdict of the jury, on the theory that in passing on the motion for a new trial it was not his duty to weigh the evidence, but that since the jury had passed upon the facts, it was the court's duty to let the verdict stand, notwithstanding that if the case had been heard by the court without a jury, it would have reached a different conclusion from the one reached by the jury. The duty of the trial court in passing upon the questions presented by the motion for new trial has been several times passed upon by this court. The first case since statehood is the case of Hogan et al. v. Bailey, 27 Okla. 15, 110 Pac. 890. In that case Mr. Justice Dunn cites with approval a case rendered by the Supreme Court of the territory of Oklahoma on the same subject and also the Kansas case, where Justice Valentine takes the same point of view as he does with reference to the duty of the trial court. Mr. Justice Dunn, says:

"The trial court has a higher function under our jurisprudence than to act merely as a moderator or umpire between contending adversaries before a jury. Not only is it charged with the duty of seeing that the course and conduct of the trial gives to each of the litigants a fair opportunity to present his cause and to have the facts weighed in the light of proper instructions declaring the law relative thereto, but it is the imperative, abiding duty of the court, after the jury has returned its verdict and awarded to one or the other success in the controversy, where the justness of the same is challenged as in this case, to carefully weigh the entire matter, and, unless it is satisfied that the verdict is responsive to the demands of justice, to set the verdict aside and grant a new trial. Not only must the jury be satisfied of the righteousness of the conclusion to which it arrives, but, unless that conclusion meets the affirmative * * * approval of the mind and conscience

of the court, it should not, where challenged, be permitted to stand. Yarnell v. Kilgore, 15 Okla. 591, 82 Pac. 990; Trower v. Roberts, 17 Okla. 641, 89 Pac. 1113; Ten Cate v. Sharp, 8 Okla. 300, 57 Pac. 645; City of Sedan v. Church, 29 Kan. 190; Citizens' State Bank v. Chattanooga State Bank, 23 Okla. 767, 101 Pac. 1118."

In the case of Yarnell v. Kilgore, supra, in passing upon the same subject Mr. Justice Burwell said:

"The approval of a verdict does not mean that formal approval which is inferred from the act of rendering judgment on it, but it means the assent and approval of the mind, after due consideration; and when the mind of the court refuses to concur in the correctness of a verdict, and its honest convictions lead it to believe that it ought to have been for the other party, then the verdict is not supported by the evidence so as to merit its approval, for in passing on a motion for a new trial, it is the court, and not the jury, that must weigh and determine the effects of the evidence. It cannot be said that a court approves a verdict when its reason and judgment rebel against the conclusion it expresses. The rule requiring a juror to be satisfied with a verdict is no stronger than the rule which makes it the duty of the trial court to approve or disapprove a verdict, as dictated by its own conscience and judgment. * * * The law here imposes a duty, the faithful and conscientious performance of which neither the press of business nor any other embarrassing conditions, will excuse."

And speaking to the same subject Mr. Justice Valentine in the case of City of Sedan v. Church, supra, said:

"* * * Trial courts are invested with a very large and extended discretion in the granting of new trials; and new trials ought to be granted whenever in the opinion of the trial court the party asking for the new trial has not in all probability had a reasonably fair trial, and has not in all probability obtained or received substantial justice, although it might be difficult for the trial court or the parties to state the grounds for such new trial upon paper so plainly that the Supreme Court could understand them as well as the trial court and the parties themselves understood them."

And in the case of Rison v. Harris, 50 Okla. 764, 151 Pac. 584, Commissioner Devereux said:

"It is plain from the language used by the trial judge in the case at bar that he has not followed the rule laid down in the above cases. It is equally clear that he was not satisfied with the verdict, because he, says, in effect, that it was his opinion that where the issue of fact was submitted to the jury, and they passed on it, it was his duty to permit the verdict to stand although he was not satisfied with its justness. The cases above cited clearly indicate that he took a wrong view of his duty in the premises."

In People v. Chew Wing Gow, 120 Cal. 298, 52 Pac. 657, it is said:

"This is one of the most important duties which the trial judge has to perform, and, since no efficient review of his action can be had, it is peculiarly incumbent upon the judge to weigh the evidence with care, and grant a new trial when, in his opinion, the interests of justice require it."

In the case of Kansas P. R. Co. v. Kunkel, 17 Kan. 145, Mr. Justice Brewer says:

"But when his judgment tells him that it is wrong, that whether from mistake, or prejudice, or other cause, the jury have erred, and found against the fair preponderance of the evidence, then no duty is more imperative than that of setting aside the verdict, and remanding the question to another jury."

It is plain from the language used by the trial judge in the case at bar that he has not followed the rule laid down in the above cases. It is equally clear that he was not satisfied with the verdict, because he says, in effect, that it was his opinion that where the issues of fact are submitted to the jury and they pass on them, he should not put his judgment up against the judgment of the jury; that the jury passed on the facts, and it was his duty to permit the verdict to stand, although he is frank to admit that if he had been hearing the case himself, he did not think that he would have reached the same conclusion that the jury did.

It is seriously contended that the trial court erred and abused its discretion in failing and refusing to set aside the judgment and verdict of the jury for the reason that it did not meet the affirmative approval of the court and because the court did not feel that the verdict was responsive to the demands of justice in said cause. In the case of the C., R. I. & P. R. Co. v. Warren, 63 Okla. —, 163 Pac. 705, Mr. Justice Hardy, in considering a like question here under consideration, said:

"It was the duty of the trial court, when the correctness of the verdict was challenged on the ground that the evidence was insufficient to support it, to carefully weigh the evidence and determine whether the verdict in his judgment was right and substantial justice had been done between the parties. This the court declined to do, upon the erroneous view of the law that it was not his duty, and that he was without authority so to do."

In the case of Sam Horton v. Prague National Bank, 60 Okla. —, 159 Pac. 930, Commissioner Burford said in the syllabus:

"2. It is the duty of the trial judge in courts of record to either approve the verdict

of the jury or to grant a new trial, and unless the trial judge believes that the verdict is just and is sustained by the weight of the evidence, he should set the same aside and grant a new trial.

"3. A motion for new trial which assigns as grounds therefor 'that said verdict is not supported by the evidence; that said verdict is contrary to the weight of the evidence,'—authorizes the trial court to set aside a verdict which he believes to be contrary to the weight of the evidence."

The reason for the rule as announced by the above authorities is that the Supreme Court, when a verdict is reasonably supported by the evidence, and it has been approved by the trial court, will not weigh the conflicting evidence to determine whether the verdict is right or not; that duty is imposed upon the trial court. All we have before us is the record of the case made in the trial court. We do not see the witnesses, and have no opportunity to observe their actions and demeanor while they testify, and are not in a position to judge their credibility and interests in the result of the trial, as is the trial judge; and, in passing on a motion for a new trial, where the verdict is challenged because it is not supported by the evidence and is contrary to the evidence and because it is not responsive to the demands of justice, it is the duty of the trial court to carefully weigh the entire matter, and, unless it is satisfied that the verdict is responsive to the demands of justice and is supported by the evidence, it is his duty to set it aside and grant a new trial.

It is clear to our minds that the trial court was of the opinion that he was without authority to weigh the evidence upon the motion for a new trial, and that the verdict in this case did not have his positive, affirmative approval, and that the court should have granted a new trial. The judgment below is therefore reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.