## ST. LOUIS & S. F. RY. CO. v. HUGHES, Adm'x.

No. 15992—Opinion Filed Jan. 19, 1926.

**New Trial—Consideration of Motion—Verdict not Supported by Evidence.**

It is the duty of a trial court, where a motion for a new trial contains, as one of the grounds therefor, that the verdict is not supported by the evidence, to weigh the evidence and to either approve or disapprove the verdict, using its own reason and judgment in determining such matter ; and if the verdict is such that its own mind refuses to concur in it after due consideration, and the court honestly believes that the verdict should have been for the adverse party, it should grant a new trial.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 3.

Error from Tulsa County ; Geo. C. Crump, Assigned Judge.

Action by Arnetta Mae Hughes, as administratrix of the estate of William F. Hughes, deceased, against the St. Louis & San Francisco Railway Company, to recover damages for the wrongful death of William F. Hughes. Judgment for plaintiff, and defendant appeals. Reversed.

Stuart, Sharp & Cruce, E. T. Miller, and Ben Franklin, for plaintiff in error.

Robinett & Ford, for defendant in error.

Opinion by FOSTER, C. On the 21st day of June, 1923, the defendant in error, Arnetta Mae Hughes, as administratrix of the estate of William F. Hughes, deceased, brought her action, as plaintiff, in the district court of Tulsa county, against the plaintiff in error, St. Louis & San Francisco Railway Company, as defendant, to recover damages for the alleged wrongful death of the deceased, William F. Hughes, while in the employment of the plaintiff in error as a brakeman on one of its freight trains. Parties will be hereinafter referred to as they appeared in the trial court. Answer was filed by the defendant and the cause proceeded to trial before the court and a jury, resulting in a verdict in favor of the plaintiff against the defendant railway company for the sum of $30,000. Motion for a new trial was filed by the defendant railway

company, overruled, exceptions reserved, and it appeals.

It is charged in the petition that plaintiff's intestate met his death while attempting to make what is denominated in the petition as a flying switch; that at a point between Tulsa and Claremore, near the town of Garnett, there was a sidetrack leading from the defendant's main track to a rock crusher situated south of the main track and in the vicinity thereof; that in the process of making what is known as a drop switch or flying switch, it was necessary to cut the engine loose from the cars, and while the engine proceeded on its way along the main track ahead of the detached cars to throw the switch and divert the cars onto the sidetrack leading from the main track cut to the rock crusher; that in performing this operation, on the 7th day of August, 1922, the deceased, William F. Hughes, cut the engine loose from the cars to be run on the sidetrack, dismounted from the engine as it passed the switch stand, and took his position at the switch stand for the purpose of throwing the switch and moving the freight cars onto the sidetrack; that in doing so he took hold of the handle of the switch, and in attempting to throw it his feet slipped from under him causing his hands to slip from the handle, throwing him against the on-coming freight cars in such fashion as to cause instant death.

The specific acts of negligence relied upon and charged by the plaintiff in her petition were: (a) Negligence of the defendant in not providing safe and suitable switching appliances; (b) negligence in not providing deceased with sufficient help for the proper performance of the switching operation; and (c) negligence in permitting quantities of oil and grease to accumulate in and around the switch stand, as the result of which the deceased slipped and fell against the on-coming cars, causing his death; but no exceptions were taken by the plaintiff to the action of the trial court in failing and refusing to submit to the jury the two alleged acts of negligence first above mentioned, and therefore the only specific act of alleged negligence with which we are concerned on this appeal is that wherein it is charged that the defendant was negligent in permitting the said oil and grease to accumulate in and around said switch stand.

Defendant answered by general denial and pleaded contributory negligence and assumption of risk. It was stipulated at the trial that both the deceased and the defendant, at the time of the accident, were engaged in interstate commerce; that the case was governed by the federal Employers' Liability Act, and that the rules announced by the federal courts applied. Numerous specifications of error are relied on by the defendant for a reversal of the judgment, but, disregarding somewhat these assignments in the order in which they are argued and presented, we shall dispose of this case in the light of the entire record, in keeping with our understanding of the rules of law governing the trial and procedure of jury cases in trial courts.

It is strenuously denied by the defendant that any oil or grease existed at the switch-stand operated by deceased which could have caused his death. Seven or eight witnesses were produced, some of whom were disinterested, who testified that they examined the premises in the immediate vicinity of the switch stand at and immediately after the accident, and saw no grease there. Close-up photographs were introduced in evidence and preserved in the record. These photographs are shown by the testimony of an equal number of witnesses to be a true and correct representation of the premises and ground around the switch stand, and between it and the south rail of the track, at the time of the accident. The photographs are shown to have been taken on the day following the accident. We have examined these photographs in connection with the positive testimony of the witness above referred to, and they disclose no trace of oil or grease. The ground around the switch stand and between it and the south rail of the main track is shown by the photographs to have been covered with a substance having the appearance of chat or cinders or both, and disclosed a footpath running parallel with the south rail and between it and the switch stand. The testimony was contradicted on the part of the plaintiff by only one witness, a young woman by the name of Mary Peers, who testified that, while returning alone from a grocery store with some potatoes, she witnessed the accident while sitting on the end of a little bridge some 50 yards west of the switch stand. She testified that earlier in the day, while going to the grocery store from her home, her foot slipped off the rail at a point directly opposite the switch stand, and that she then observed considerable quantities of thick black grease 2½ feet wide extending a distance of six feet from the south rail to the switch stand, and that this grease was on the ties and on the ground between the rail and the switch stand; that in going to the grocery store earlier in the day her foot slipped off the rail just opposite the switch

stand into the grease and some of the grease stuck to her shoe. She testified that while sitting on the end of the little bridge above mentioned, she saw the deceased take hold of the switch lever, and that in attempting to pull the lever and throw the switch, his foot slipped from under him, causing his hands to slip from the handle and he fell back against the moving cars and was killed. She testified that he was standing on the east side of the switch stand, but that from her position she could not tell whether his feet were actually in the grease or not. She testified further that she did not go to the scene of the accident, and none of the employes of the defendant or any other person who visited the scene of the accident immediately after it occurred testified that they saw her.

The engineer in charge of the engine testified that he saw the deceased take hold of the switch handle, and that his hand seemed to slip off the handle, and that as he fell back a long raincoat, which the deceased had on at the time, seemed to have caught on the rail, pulling the deceased down.

At the hearing, on a motion for a new trial filed by the defendant, the defendant offered in evidence an affidavit by the witness Mary Peers, in which she practically disclaimed her testimony at the trial in reference to the presence of grease at the switch, together with the affidavit of two police officers of the city of Tulsa, to the effect that the witness Mary Peers was a police character and had been arrested by them a number of times for disorderly conduct, and in the course of a colloquy between the court and counsel for defendant at this hearing, in reference to certain alleged unfair practices resorted to by the defendant in obtaining the affidavit from Mary Peers, the trial court made the following statement:

"Now, I am not passing upon the truthfulness or untruthfulness of the testimony in this hearing, that was submitted to the jury. Mr. Franklin—You are speaking of the testimony all the way through? In the trial of the case."

Again, in the course of the same colloquy, the court in criticizing the conduct of counsel for defendant used this language:

"* * * I think you are responsible for this excessive verdict. Your own conduct in this case, your bombastic way of examining this little girl when you did not have the proof to justify it, is not to be approved."

The record discloses, and it is not seriously disputed, that the verdict of the jury rendered against the defendant in the sum of $30,000 rested upon the truthfulness of the testimony of Mary Peers, who was contradicted by the direct testimony of seven or eight witnesses, to the effect that they observed no grease in the vicinity of the switch and by the physical facts and circumstances as disclosed by the photographs admitted in evidence on behalf of the defendant. While the jury by its verdict found in favor of the truthfulness of the testimony of Mary Peers, it was, we think, nevertheless incumbent upon the trial court, when the sufficiency of the evidence on the part of the plaintiff was challenged in the motion for a new trial filed, to itself weigh the evidence and to approve or disapprove the verdict as its judgment and conscience should dictate. That the trial court, by its action in formally overruling defendant's motion for a new trial, did not thereby affirmatively approve the verdict of the jury is made apparent by the trial court's own statement appearing in the record, to the effect that counsel for defendant was responsible for the "excessive" verdict rendered by the jury. Under the facts and circumstances of this case, there was, it seems to us, a peculiar duty resting upon the trial court to weigh the evidence in the case and approve or disapprove the verdict rendered by the jury. The sufficiency of the evidence to sustain the verdict was directly challenged in defendant's motion for a new trial. The lone witness for the plaintiff was not corroborated by any other witness or by the physical facts and circumstances as disclosed by the photographs introduced in evidence. Since she was 50 yards away and testified that she could not see whether plaintiff's intestate was actually standing in the grease or not, there was serious doubt, even if her evidence should be accepted at its face value, whether any causal connection had been shown between the negligence charged and the injury sustained. The trial court had before it the witnesses and an opportunity to observe their demeanor and manner of testifying on the stand, which opportunity, on the cold record presented, is denied to the Supreme Court on appeal. The Supreme Court cannot weigh conflicting evidence in jury cases. Should a trial court be permitted to evade the duty imposed on it by law, of weighing and considering the evidence where the sufficiency of the evidence is challenged on motion for a new trial, and of thereupon approving or disapproving the verdict rendered, it would necessarily result in the sweeping aside of all judicial barriers against the excesses of juries in trial courts.

The rule applicable to the situation presented in the instant case is stated very clearly by Justice Burwell of the territorial Supreme Court, as follows:

"It is the duty of the trial court, where a motion for a new trial contains, as one of the grounds therefor, that the verdict is not supported by the evidence, to weigh the evidence and to either approve or disapprove the verdict, using its own reason and judgment in determining said matter; and if the verdict is such that its own mind refuses to concur in it after due consideration, and the court honestly believes that the verdict should have been for the adverse party, it should grant a new trial." Yarnell v. Kilgore, 15 Okla. 591, 82 Pac. 990.

This rule has been followed in numerous subsequent cases, as follows: Hogan v. Bailey, 27 Okla. 15, 110 Pac. 890; White v. Dougal, 60 Okla. 200, 159 Pac. 907; Horton v. Prague National Bank, 60 Okla. 240, 159 Pac. 930; Hennessey Oil & Gas Company v. Neely, 62 Okla. 101, 162 Pac. 214; C., R. I. & P. Ry. Co. v. Wainscott, 103 Okla. 187, 229 Pac. 808.

In Hogan v. Bailey, supra, this court said, speaking through Mr. Justice Dunn: (

"The trial court has a higher function under our jurisprudence than to act merely as a moderator or umpire between contending adversaries before a jury. * * * Not only must the jury be satisfied of the righteousness of the conclusion to which it arrives, but, unless that conclusion meets the affirmative, considerate approval of the mind and conscience of the court, it should not, where challenged, be permitted to stand."

In the late case of C., R. I. & P. Ry. Co. v. Wainscott, supra, it is said:

"It is the duty of the trial court, upon a motion for a new trial, which challenges the verdict upon the ground that it is contrary to the evidence, to weigh the evidence and to approve or disapprove the verdict, and if the verdict is such that it does not meet the affirmative, considerate approval of the mind and conscience of the court, he should set it aside and grant a new trial."

The rule that this court on appeal will not disturb the verdict of the jury based on conflicting evidence, where there is any evidence reasonably tending to support it, is applicable only when the trial court has itself weighed the evidence and approved or disapproved the verdict.

Not only did the trial court in the instant case expressly refuse to pass on the truthfulness or the untruthfulness of the evidence introduced at the trial, but it has indicated that the verdict itself is excessive.

The judgment of the trial court is accordingly reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.