**ILLINOIS OIL CO. v. PENDER et al.**

No. 18229. Opinion Filed Dec. 18, 1928.

Rehearing Denied June 11, 1929.

Arrington & Evans and Wilcox & Swank, for plaintiff in error.

Mason, Honnold & Harper, for defendants in error.

HERR, C. This is an action by T. A. Pender and numerous others, as stockholders of the Illinois Refining Company, against the Illinois Oil Company, to recover damages because of alleged fraud growing out of transactions between these companies. The trial resulted in a verdict and judgment in favor of plaintiffs. Defendant appeals.

Both parties to this litigation are Illinois corporations having their principal offices at Rock Island, Ill. The Illinois Oil Company owned and was operating an oil refinery at Cushing, Okla., and the Illinois Refining Company was operating a refinery under a lease at Bristow, Okla. It appears that Charles E. Welch was president, director and manager of the Illinois Refining Company, and was also manager of the Illinois Oil Company's refinery at Cushing.

The gist of the action is that Charles E. Welch, as manager of the oil company, purchased large quantities of crude oil, and resold the same to the Illinois Refining Company at fraudulent and grossly excessive prices, whereby large profits were made by the said oil company at the expense of the refining company; that these transactions were conducted by Mr. Welch in behalf of both companies, and as manager for both, and that the same were by him concealed from the stockholders of the refining company.

It is contended that the board of directors of the refining company were under the control and domination of the oil company, and that such board of directors, therefore, took no action to protect the interests of the stockholders of the refining company; that, upon the discovery of the alleged fraud, the stockholders of the refining company brought this action making the refining company a party defendant. It appears, however, that, subsequent to the commencement of the action, the personnel of the board of directors of the refining company changed, and, thereafter, upon its motion, the refining company was realigned as a party plaintiff.

If the facts are as contended by plaintiffs, they were undoubtedly entitled to recover. There was no contract entered into between the two companies authorizing the Illinois Oil Company to purchase crude oil for the benefit of the refining company, but, except as to certain dealings hereinafter to be mentioned, it is conceded that certain quantities of oil were purchased by the oil company on its account, by and through its manager, Charles E. Welch, and by him resold and delivered to the refining company as, in his judgment, as manager of the said refining company, the same was needed to supply the demands of its refinery at Bristow.

Defendant contends that the evidence wholly fails to show that unconscionable profits were made by it through sales to the refining company, but, on the contrary, asserts the evidence establishes that these sales were made at cost, and that no profit whatever was made by it in these transactions. At the close of all the testimony, defendant requested a peremptory instruction in its favor, and assigns as error the denial of this motion.

The transactions complained of cover a period beginning November 6, 1921, and ending November 25, 1922. This period is divided by the parties, for convenience, into two parts, the first beginning November 6, 1921, and ending July 4, 1922, and the second beginning July 5, 1922, and ending November 25, 1922.

It is conceded by all parties that the oil furnished and delivered during the first period mentioned was oil purchased by the oil company on the open market in the Cushing field, and by it resold to the refining company. As to the transactions covering this period, we are of the opinion that the evidence wholly fails to establish fraud, and we shall, therefore, dismiss this branch of the case without further discussion.

We next consider the transactions cov-

ering the second period, that is, those from July 5, 1922, to November 25, 1922. It appears that on July 5, 1922, Mr. Welch entered into a contract with the Cosden Pipe Line Company, whereby he agreed to and did purchase from said company for future delivery 200,000 barrels of crude oil at $2.50 per barrel. The oil called for in this contract was delivered by the Cosden Company to the Illinois Oil Company, and 40,573 barrels thereof were delivered by said oil company to the refining company, and said refining company was charged therefor prices ranging from $2 to $2.65 per barrel.

Shortly after entering into the contract above mentioned, there was a marked decline in the market price of crude oil, and the refining company suffered a loss on the oil delivered it under the Cosden purchase in an amount in excess of $30,000, this amount representing the difference between the market price and the price charged the refinery by the oil company. The verdict of the jury was for the sum of $20,287.

It is the contention of plaintiffs that the oil company had no right to deliver and charge this oil to the refining company at a price grossly in excess of the market price, and in this manner shift a part of the loss, flowing from the Cosden contract, to the refining company.

On behalf of the defendant, it is contended that this contract was a joint contract entered into between the Cosden Company and Mr. Welch, in behalf of both the Illinois Oil Company and the Illinois Refining Company, and that the refining company should, therefore, be compelled to suffer its part of the loss.

The contention of plaintiffs is that this contract was not a joint contract, but was entered into between the Cosden Company and the Illinois Oil Company; that the refining company was not a party thereto, but after it was discovered that such contract resulted in a loss, it was then attempted to unload a part of such loss upon the refining company.

On this proposition the evidence discloses that, on July 5, 1922, Mr. Graham, manager of the Cosden Pipe Line Company, called Mr. Welch over the phone at Cushing and offered him 200,000 barrels of crude oil at the then market price; that this offer was accepted by Mr. Welch; that Mr. Graham later confirmed this telephonic conversation by a letter, which letter was addressed to the Illinois Refining Company at Cushing. To this letter, Mr. Welch, as manager of the Illinois Oil Company, replied as follows:

"In reply to your favor of July 5th, in which you confirm phone conversation, in which you agree to sell and deliver 200,000 barrels of crude oil at a gravity of 37 or better at a price of $2.50 per barrel, regardless of whether the market goes up or down.

"It is also agreed that we expect delivery of a minimum of 2,500 barrels and a maximum of 4,000 barrels per day. Payments to be made on regular crude payment days, which are the 25th of the month for the oil run from the 1st to the 15th, and the 10th of the month preceding month for the oil run from the 15th to the 31st.

"In your letter of July 5th you advise the acknowledgment of your letter is sufficient contract upon which to deliver this oil.

"Thanking you very kindly for your courtesies in this matter, and trusting that our business relations will always continue in the same pleasant manner, I remain

"Yours very truly,
"Illinois Oil Company,
"Per. Chas. E. Welch, Mgr."

Mr. Graham testifies that he knew of but one company at the time he made the deal; that he was dealing with the refinery at Cushing, and that so far as he knew the oil was purchased to run through the refinery at Cushing. The run tickets show that this oil was run from the Cosden pipe line to the Illinois Oil Company. The billing and statements for the oil runs were all rendered by the pipe line company to the Illinois Oil Company, and the books of the pipe line company show that the oil was conveyed to the oil company and charged to it.

Neither the books of the oil company, pipe line company, nor the Illinois Refining Company show this contract to be a joint contract, but the weight of the evidence seems to be to the effect that the contract was alone the contract of the Illinois Oil Company. The oil called for in this contract was delivered to the oil company, and a quantity thereof, in excess of 40,000 barrels, was by it delivered and charged to the refining company at different prices than those mentioned in the contract, and at prices far in excess of the market price on the date of delivery.

These transactions were all conducted by Chas. E. Welch as manager of both companies, yet he was not present at the trial, and did not testify. The only evidence offered tending to show the contract was a joint contract is the testimony of F. P. Welch, president of the Illinois Oil Company, that he was advised by Chas. E. Welch, manager of both companies in Oklahoma,

that the purchase was a joint purchase, and that the same was by him confirmed; and the further testimony that the letter of confirmation by the Cosden Company was erroneously addressed to the refining company; and the tank tables showing the names of both companies indorsed thereon.

This evidence was certainly sufficient to go to the jury on the question as to whether or not this contract was a joint contract. The jury evidently found against the defendant on this issue. It was properly instructed relative thereto, and, there being evidence reasonably tending to support such finding, the same will not be disturbed by this court on appeal. There was no error in denying defendant's motion for a peremptory instruction.

It is next contended that plaintiffs' cause of action is barred by the statute of limitation; that the last transaction had by defendant with the refining company was in November, 1922; that the action was not begun until March 9, 1926. The evidence, however, is to the effect that the alleged fraud was not discovered until sometime in the early part of 1926. Under the statute, plaintiffs had two years after discovering the fraud within which to bring the action. The action was, therefore, not barred.

It is next assigned as error that the court erred in giving the following instruction to the jury:

"You are further instructed that the contract between two corporations effected by officers or agents common to both, wherein the evidence shows one of said corporations has been injured thereby, is presumptively invalid, and can be sustained only by an affirmative showing of fairness and good faith on the part of the party seeking to sustain such contract. So, in the case at bar, if you find from the evidence that the contract for sales of oil by the Illinois Oil Company to the Illinois Refining Company, complained of in this suit, was entered into by such agents or officers of both corporations, or if you find that such contract was made by Charles E. Welch, who was acting as the manager of both corporations in such transaction, and the evidence shows, by a preponderance thereof, that the Illinois Refining Company was injuriously affected thereby, then the law presumes such contract of sale to be illegal and void, and the burden would be upon the defendant, the Illinois Oil Company, to prove by a fair preponderance of the evidence, both the fairness and good faith of such contract."

It must be remembered that Mr. Welch was acting as manager and agent for both companies and that the transactions here brought in question were conducted by him while acting for both parties. He was their common manager. In these circumstances, the principle of law here involved is as stated by this court in the case of Bentley et al. v. Zelma Oil Co. et al., 76 Okla. 116, 184 Pac. 131:

"A contract between two corporations, effected by votes of directors common to both, is presumptively invalid and can only be sustained by an affirmative showing of fairness and good faith."

In the case of Mathieson Alkali Works v. Arnold, Hoffman & Co., 280 Fed. 132, it is said:

"There is a strong presumption against the validity of transactions between corporations, where conducted entirely through the agency of officers acting at the same time for both corporations, and the burden is on those who would maintain the transactions to show their entire fairness."

In the case of Corsicana Nat. Bank v. Johnson, 251 U. S. 68, 64 L. Ed. 141, the court, in the body of the opinion, says:

"The fact that the same persons were directors and managers of both corporations subjects their dealings inter sese to close scrutiny. That two corporations have a majority, or even the whole membership of their boards of directors in common, does not necessarily render transactions between them void; but transactions resulting from the agency of officers or directors acting at the same time for both must be deemed presumptively fraudulent unless expressly authorized or ratified by the stockholders."

See, also, the following authorities: Twin Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 329; Wardell v. Union P. R. Co., 103 U. S. 651, 26 L. Ed. 509; Thomas v. Brownville, Ft. K. & P. R. Co., 109 U. S. 522, 27 L. Ed. 1018; Richardson v. Green (Washburn v. Green), 133 U. S. 30, 33 L. Ed. 516; McGourkey v. Toledo & O. C. R. Co., 146 U. S. 536, 36 L. Ed. 1079.

There was no error in giving this instruction.

Exceptions have been taken to other instructions given as well as those refused. These instructions are not set out in the brief as required by the rules of this court. Nevertheless, we have considered these exceptions and hold that the court did not err in this regard.

The assignment that the suit was not authorized by the stockholders of the refining company is without merit and will be dismissed without further consideration.

It is finally contended by defendant that

the court erred in overruling its motion for a new trial. In this connection it is urged that the language used by the trial court, when ruling on the motion, indicates that he did not approve the verdict, and it was, therefore, his duty, under the law, to set the same aside. The language criticized is as follows:

"I am not satisfied that the verdict of the jury is right, and I am not satisfied that the verdict of the jury is wrong."

It is well established that, if the trial court cannot conscientiously approve the verdict of the jury, it is his duty to set the same aside. Hogan v. Bailey, 27 Okla. 15, 110 Pac. 890; White v. Dougal, 60 Okla. 200, 159 Pac. 907; C., R. I. & P. R. Co. v. Wainscott, 103 Okla. 187, 229 Pac. 808; St. L. & S. F. R. Co. v. Hughes, 116 Okla. 90, 243 Pac. 169. But this duty does not prevent the trial court from yielding any impression or opinion of its own to that of the jury, if, upon consideration of all the evidence, he arrives at the conclusion that the verdict of the jury is right. McLaughlin, Adm'r, v. Lagers, 99 Okla. 155, 255 Pac. 920; Futterman v. Gott, 96 Okla. 47, 220 Pac. 44; Hall v. Polson, 130 Okla. 136, 265 Pac. 1068.

We see nothing in the language used by the trial court tending to indicate that it could not conscientiously approve the verdict of the jury. The overruling of the motion indicates that it did approve the same. The language of the court clearly indicates that, in its opinion, there was no injustice in permitting the verdict to stand.

While the language criticized should, probably, not have been used by the trial court, in our opinion, it does not come within the rule requiring a reversal of the judgment because of its use.

The other errors assigned are without merit.

Judgment should be affirmed.

TEEHEE, HALL, JEFFREY, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 12 R. C. L. p. 444; 2 R. C. L. Supp. p. 1428; 4 R. C. L. Supp. p: 758; 5 R. C. L. Supp. p. 644. See "Appeal and Error," 4 C. J. §2834, p. 853, n. 61; §2875, p. 905, n. 41. "Corporations," 14a C. J. §1894, p. 127, n. 24, 25. "Fraud," 27 C. J. §208, p. 72, n. 54. "Limitations of Actions," 37 C. J. §299, p. 929, n. 1; §785, p. 1255, n, 55, 58.