CARTER OIL CO. et al. v. DOYAL.

No. 19812. Opinion Filed Dec. 30, 1930.

Champion, Champion & Fischl and Earl A. Brown, for plaintiffs in error.

Brett & Brett, for defendants in error.

BENNETT, C. C. D. Doyal, herein referred to as plaintiff, sued Carter Oil Company et al., defendants, to recover damages for destruction of crops and pasturage alleged to have been caused by oil and salt water permitted to escape from their leases and flow down Bayou creek and over plaintiff's premises.

The cause was tried to a jury, who found for defendants. Plaintiff filed a motion for new trial, which the court sustained. To review this action of the court, defendants appealed and for reversal assert:

That the court erred in sustaining said motion for that plaintiff failed to prove any damage to his crops by oil or salt water, and they urge also that there was conflict in the evidence which the jury properly determined in defendants' favor; that plaintiff failed to fix liability upon defendants or either of them for the damage claimed.

The argument proceeds mainly upon the theory that under no view of the evidence could plaintiff recover.

The following is the vital part of the evidence:

Plaintiff, a farmer, during 1926, cultivated a crop on 120 acres of leased land known as the Reynolds place in Carter county. A certain bayou traversed the west end and Wolf creek flowed through the east end of the tract. The defendants had mineral leases and producing oil wells above said farm and near said bayou and upon the watershed draining into same. During 1926 oil and salt water were escaping from these wells and leases. In June and July, 1926, there were three overflows in the streams aforesaid, resulting in the washing down of quantities of oil and salt water, which were left by the receding waters upon plaintiff's growing crops of corn, cotton, millet, and feed stuff, and upon his pasture. The crops were not washed down nor did the waters stand on them long enough to drown them out. Five acres of cotton worth $125 or more, about ten acres of corn worth about $180, an acre of millet worth $25, and the grass on 30 acres of pasture worth $30 were destroyed. Witness, after seeing the oil and salt water on the crops, attributed their loss to these elements, since other crops overflowed from Wolf creek (fresh water) at the same time and to the same extent were not injured.

Defendants' damage agent, McLennan, came with his witnesses and looked over the damaged fields several times. At one time Mr. McLennan, after examining the crops, said that they were somewhat damaged by oil, but suggested waiting until they matured so that the damage could be fairly determined and settled. But in the fall, when it came to a showdown, he thought plaintiff's demands too high.

Plaintiff on cross-examination said, in substance, that he was 39 years old; was raised on the bayou. Crops there are destroyed by water alone when washed down, but where they stand up they will mature; his crop stood up and did not mature, but died. When oil strikes a crop, it does not act as if it were drowned, but it dies. He paid no rent other than putting the land in cultivation. The water in the first overflow came up in the morning and went down that evening, the second came up at night and went down next day. Where the oil ran over the land, it looked like fire had hit it. The foregoing testimony of plaintiff was corroborated by that of W. N. Fullingin, Guy Fullingin, A. J. Cook, W. M. Oakman, and Rowe Temple. Plaintiff being recalled testified that he knew of his own knowledge that the Carter, the Magnolia, the Roxana, the Texas, the Gypsy, and the Coline Oil Companies had oil wells producing on the watershed of this bayou and above plaintiff's land, and that

these are in sections 15, 21, 23, 26, township 4 south, range 2 west, Carter county, Okla., and that along the creek witness saw salt water coming out of little branches leading to the bayou, and also oily places around the wells and around the slush pits; they all let the oil and salt water run down into the pits and overflow into ravines leading into the bayou. Witness has seen oil escaping from the slush pits of the Roxana and Magnolia Company leases. Plaintiff investigated the field and the source of the oil and salt water and his testimony is based upon the result of that investigation.

An equal number of witnesses testified for defendants in contradiction of the evidence of plaintiff, only, however, as to the fact of damage of the crops and the amount thereof. Mr. McLennan selected several men to visit plaintiff's crops after each flood. Their evidence indicated that plaintiff's damage arose from other causes—that his lands were shaded by pecan trees; that oil and salt water played no part therein; that no evidences of oil or salt water of consequence were found on the premises.

These witnesses had been used several times before by Mr. McLennan to testify for defendants in similar suits, and were paid for their services by defendants, and always visited the property at the suggestion of and in company with Mr. McLennan.

We have read the record and evidence, and are driven to the conclusion that plaintiff's evidence reasonably supports his contention that his crops were damaged by oil and salt water, and that defendants are responsible therefor. Defendants urge that there was an irreconcilable conflict in the evidence, and that this should preclude the granting of a new trial. The recognition of this rule would make of the trial judge a mere figurehead. Such holding would lead to an absurdity under the facts of this case.

Defendants also insist that plaintiff could not identify with legal accuracy the location of each well and lease of which he complains. True, the plaintiff was an illiterate, and was hazy in speaking of section numbers, etc., but he was clear as to his going over the oil field, seeing oil escaping from slush pits into the gullies leading to the bayou, the salt water coming from the leases and the location of wells, etc., on the watershed. And this evidence stands unchallenged in the record.

Was the court, therefore, in error in granting a new trial? It is not needful that we should review the many cases which have recognized the applicable rule of law in this state. The most recent case is American Nat. Bank of Ardmore v. Dunn, 143 Okla. 116, 287 Pac. 999. There the opinion quotes with approval from the opinion in Baker & Strawn v. Magnolia Petroleum Co., 124 Okla. 94, 254 Pac. 26, as follows:

"The court may have sustained the motion for any one or more of the reasons set forth in the motion for a new trial, and sufficient ground may have been found for so doing, and this court has repeatedly held that the trial court, for the purpose of administering justice, has a very wide latitude and extended discretion in setting aside and modifying proceedings had in its own court, and where the trial court grants a new trial, it will not be reversed unless it can be seen beyond all reasonable doubt that the trial court has manifestly and materially erred with respect to some pure, simple, and unmixed question of law, and that, except for such error, the ruling of the trial court would not have been so made, and all this must appear from the record."

Other cases supporting the general doctrine announced here may be found. Hennessey Oil & Gas Co. v. Neely, 62 Okla. 101, 162 Pac. 214; Hogan v. Bailey, 27 Okla. 15, 110 Pac. 890; Chicago, R. I. & P. Ry. Co. v. Wainscott, 103 Okla. 187, 229 Pac. 808; St. Louis & S. F. Ry. Co. v. Hughes, Adm'x, 116 Okla. 90, 243 Pac. 169.

Here the trial court had before him the witnesses, counsel, jurors. If, in his judgment, upon a fair consideration, a proper verdict was not rendered, he not only had the right, but it was his plain duty, to grant a new trial upon a proper application. It is the fixed policy of the law that a trial judge shall not occupy the bench simply as a moderator of the proceedings, to preserve order and decorum, and to instruct the jury, and to announce the result. He must consider the cause being tried, the evidence offered, the verdict rendered thereon, and must approve the same; otherwise, no valid judgment may be entered.

The court in his order granting a new trial made certain findings which we may not disregard: (1) That the verdict is contrary to the clear weight of the evidence and contrary to law; (2) that certain members of the jury from their demeanor and deportment were biased and prejudiced in favor of the defendants and disregarded the evidence of plaintiff; (3) that the verdict does violence to justice, and that a new trial in furtherance of justice should be granted.

Evidently the court weighed the evidence, and could not approve the verdict. The find-

ing that certain members of the jury were biased and prejudiced in favor of defendants and disregarded plaintiff's evidence is a challenge which cannot be ignored. The demeanor and deportment of jurors perhaps cannot be readily, accurately, or adequately transcribed onto the record for our consideration. The court's further finding that the verdict does violence to justice is a matter of weight here, and we would be disposed to give it consideration, even though the trial court were not able or were disinclined to set out in his order for a new trial just why he was so impressed.

These matters were sufficiently presented by the motion for new trial, and sufficiently disclosed by the findings of the trial court.

For these reasons, we hold that the court did not abuse his discretion by granting a new trial, and his order to that effect is affirmed.

HERR, DIFFENDAFFER, LEACH, and EAGLETON, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 20 R. C. L. 271, et seq.