JOSEPH McCREARY, *as Sheriff, etc., et al.*, v. T. F. HART & COMPANY.

NEW TRIAL, *Order Granting, Not Reversed.* Where a verdict of the jury is founded upon the testimony of a witness directly contradicted by another witness, and the trial court sets the verdict aside, the supreme court will not reverse the decision or order of the trial court granting a new trial.

*Error from Montgomery District Court.*

ACTION by *T. F. Hart & Co.* against *Joseph McCreary*, as sheriff of Montgomery county, and his deputy, for the possession of a certain stock of goods. Trial at the March term, 1886, and verdict for defendants. The plaintiffs filed a motion to set aside the verdict and for a new trial, which motion the court sustained. Of this order the defendants complain, and bring the case here. The material facts are stated in the opinion.

*J. D. McCue*, and *J. B. Ziegler*, for plaintiffs in error.

*A. L. Wilson*, and *Wm. Duncan*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: Tootle, Hanna & Co., and other mercantile firms, obtained writs of attachment against Logan Bros. & Pitzer, and A. G. Logan, which were levied upon a stock of general merchandise found in the possession of T. F. Hart & Co., who claimed to be the owners thereof. Hart & Co. brought their action against the sheriff and his deputy, for the possession of the goods. The following are the leading facts disclosed by the evidence: On February 6, 1885, Logan Bros. & Pitzer were the owners and in the possession of the stock of merchandise, at Cherryvale, in this state. A. G. Logan, the father of the Logan brothers, upon that date purchased the same and assumed the indebtedness, which consisted of a chattel mortgage to C. Dobson & Co. of twenty-one hundred dollars, and various accounts due to firms for goods, amounting to

about two thousand dollars. At the time, the Logan brothers were also indebted to their father in the sum of eighteen hundred dollars; and it was the agreement that this sum should be received as part of the purchase-money on the stock. On March 6, 1885, A. G. Logan sold and transferred the goods to T. F. Hart & Co. The bill of sale of the goods was signed by Logan Bros. & Pitzer and A. G. Logan. Hart & Co. assumed the payment of the chattel mortgage, then amounting to nineteen hundred dollars; paid A. G. Logan nine hundred dollars in cash; conveyed to him one hundred and sixty acres of land in Missouri; and also turned over to him two notes, aggregating three hundred dollars. The unsecured liabilities of Logan Bros. & Pitzer and A. G. Logan were two thousand dollars or over; the value of the goods from forty-five hundred to five thousand dollars. At the time of the purchase by Hart & Co. no invoice of the goods was taken. The firm of Hart & Co. consisted of T. F. Hart and S. M. Pearson; Hart was lately from Illinois, but Pearson was a resident of Cherryvale; he had formerly been engaged in farming; and also for some years in the mercantile business. At the time of the purchase he was a real-estate agent. Hart turned over to Pearson fifteen hundred dollars in money, as his part of the capital of the firm. Prior to the purchase, Pearson knew that A. G. Logan was being pressed by his creditors, and did not have any ready money to pay his debts. He also knew that an attorney of some of the creditors had been at Cherryvale seeking the payment of claims against the Logans. After the sale was completed, A. G. Logan had the following assets with which to pay the claims of the unsecured creditors: Cash realized upon the sale, nine hundred dollars; book accounts, from six hundred to eight hundred dollars; notes, two hundred and fifty dollars; judgment, three hundred and eighty dollars; and one hundred and sixty acres of land in Missouri, estimated at fifteen hundred dollars.

The jury returned a verdict in favor of the defendants, finding that they were rightfully in possession of the stock of goods; and also found that the value of the defendants' in-

terest in the property, under the writs of attachment, was two thousand twenty-six dollars and forty cents, being the amounts of the attachments, with costs, of the creditors of Logan Bros. *et al.* T. F. Hart & Co. filed their motion to set aside the verdict of the jury, upon the grounds, among others, that the verdict was contrary to the evidence; and that it was not sustained by sufficient evidence; also, that it was contrary to law. The district court set the verdict aside and granted a new trial. Of this, complaint is made.

Where a new trial is granted, this court will interfere only when the trial court misapplies or mistakes some settled principle of law, or manifestly abuses its discretion. Again, new trials are favored, instead of being disfavored, where any question can arise as to the correctness of the verdict. (*Field v. Kinnear,* 5 Kas. 238; *Owen v. Owen,* 9 id. 96; *Atyeo v. Kelsey,* 13 id. 216; *City of Sedan v. Church,* 29 id. 192; *Brown v. A. T. & S. F. Rld. Co.,* 29 id. 189; *U. P. Rly. Co. v. Diehl,* 33 id. 426.)

We think it is plainly manifest that if the real estate conveyed to A. G. Logan, and situated in Missouri, was not worth about fifteen hundred dollars at the date of the purchase, as testified to by S. M. Pearson, then the necessary consequence of the sale and transfer of the stock of goods by A. G. Logan to Hart & Co. was to hinder and defraud his creditors. If such was the case, the law presumes that it was done with fraudulent intent. Hart cannot claim ignorance of Pearson's knowledge, as it appears that Pearson was Hart's agent and knew that A. G. Logan was being pressed by his creditors and was unable to pay. The trial court, however, seems to have relied upon the evidence of Pearson as to the value of the Missouri property, instead of the evidence of Logan. Pearson testified that the real estate was taken by A. G. Logan at the estimated value of two thousand dollars, but that its actual value was fifteen hundred dollars. Logan testified that Pearson represented "that the real estate was worth two thousand dollars," but after the sale he ascertained that it was worth only two or three hundred dollars. He testified:

"I would not give three hundred dollars for it; it would not sell for that." If the real estate was fully worth fifteen hundred dollars, as testified to by Pearson, then not only no fraud was intended, but no fraud would result from the sale of the goods, as Logan was possessed of ample ability to pay all his creditors. The real estate could be readily subjected to his debts, and is situated in the state where his creditors reside and transact business. If the real estate in Missouri was worth only two or three hundred dollars, then Pearson not only committed a fraud upon his partner Hart, but also defrauded Logan and attempted to defraud his creditors. For this action the firm of Hart & Co. must be held responsible, as he was not only the partner of Hart, but his agent in all the transactions with A. G. Logan and the Logan brothers.

If the real estate and other assets in the hands of A. G. Logan after the sale of the stock of goods, were not plainly in sight and clearly accessible to his creditors, and sufficient to pay their claims, and if the circumstances of the transaction between Hart & Co. and Logan, or Pearson and Logan, were sufficient to put them, or either, on the inquiry, they ought to have seen to it, and known that the nine hundred dollars paid to Logan was applied in payment of his debts, and they could not rely upon his declaration of an intention to so apply the nine hundred dollars.

Assuming, however, that the trial court did not believe, from the testimony, that the sale was made with any fraudulent intent, but did believe that the real estate in Missouri, conveyed to Logan, was worth fifteen hundred dollars, and therefore that Logan possessed more ability to pay his creditors after the sale than before, we cannot interfere with the ruling of the trial court in setting aside the verdict. Upon another trial, doubtless more evidence will be presented concerning the actual value of the real estate conveyed. This seems to be the pivotal point in the case. If the real estate was worth only two or three hundred dollars, Logan, after retaining from his creditors the nine hundred dollars paid in cash, did not have the means with which to pay his debts;

and in any event there was not sufficient property in sight, if the real estate was worth only two or three hundred dollars, clearly accessible for the payment of his creditors.

The decision and order of the district court will be affirmed.

All the Justices concurring.