## J. Ten Cate v. M. E. Sharp.

(Filed April 10, 1899.)

1. New Trial—*Verdict Set Aside—Appeal.* Where the verdict of a jury is founded upon the testimony of one witness, who was directly contradicted by another, and the trial court sets the verdict aside, the supreme court will not reverse the decision or order of the trial court granting a new trial, and when a new trial is granted, the supreme court will only interfere when the trial court misapplies or mistakes a well settled principle or law or obviously abuses its discretion; and new trials are favored, instead of being disfavored, where any question can arise as to the correctness of the verdict.

2. Same—*Error.* This court will not reverse the ruling of the trial court granting a new trial unless it can be seen beyond all reasonable doubt that the trial court has manifestly and materially erred with respect to some pure, simple and unmixed question of law, and that except for such error the ruling of the trial court would not have been made as it was made, and that it ought not to have been so made. The supreme court will very seldom and very reluctantly reverse the decision or order of the trial court which grants a new trial.

3. Same — *Review on Appeal.* The judge of a trial court has the opportunity to observe the errors or mistakes which may have intervened during the original trial, and he has a better opportunity than this court of determining whether injustice may have been done to the losing party, who asks for a new trial, and it is better that the winning party should rely upon a new trial, than to bring the case to the supreme court, which cannot have an equal opportunity with the trial court in concluding whether or not complete and full justice was done to the losing party in the cause.

(Syllabus by the Court.)

*Error from the District Court of Noble County; before A. G. C. Bierer, District Judge.*

*S. H. Harris,* for plaintiff in error.

*H. B. Martin,* for defendant in error.

STATEMENT OF THE CASE.

This action was begun by Ten Cate, who filed his petition below, on June 19, 1897, against M. E. Sharp and J. P. Valentine, alleging that in April of that year the plaintiff purchased from Valentine a number of hogs for the total consideration of $519, and thereupon executed his promissory note, payable to the order of Sharp, for the said sum and interest; that the note was negotiable, and held by Sharp; that at the time of the purchase of the hogs they were warranted by Valentine to be free from disease, but that they were in fact not free from disease at the time of the purchase, but were infected with hog cholera, and nearly all died soon after the purchase, and that they infected other hogs belonging to the plaintiff, which also died thereafter; that by reason of the breach of warranty the plaintiff was damaged in a large sum of money. And the petition prayed for a temporary order of injunction, restraining the defendant, Sharp, from disposing of the note, and for judgment for the cancellation of it. The defendant, Sharp, was summoned, and filed his answer and cross petition in the case, denying generally all the allegations in the plaintiff's petition, and especialy that he had at any time or in any manner been in partnership with Valentine and denying especially that on the 18th day of April in the transaction averred in the petition, or at any other time, he had held himself out to be a partner of Valentine, and especially averred that on the said 18th day of April the plaintiff "purchased from Valentine two hundred and fifty head of hogs, at the agreed price of $519, and that thereafter, on the same day, the plaintiff, in consideration of the

sum of $472.94 advanced by this defendant, Sharp, to Valentine, as the purchase price of the hogs, executed and delivered to the defendant, Sharp, his promissory note in writing for the sum of $519, with interest." The plaintiff filed his verified reply to the said answer and cross bill, denying generally the execution of the note in question. Valentine was not served with summons, and made no appearance in the case. Upon the issues thus framed the case was tried to a jury. The defendant in error requested the court to instruct the jury that: "Special Instruction No. 3. The court further instructs the jury that if you believe from the evidence that J. P. Valentine warranted the hogs sold to the plaintiff, Ten Cate, to be free from disease or contagion, and that said hogs were in fact infected with a contagious disease at the time of their delivery to the said Ten Cate, that these facts do not constitute a defense against the cause of action of defendant upon the promissory note set up in defendant's answer, unless the said M. E. Sharp had notice of said warranty, and had notice at or before the date of said promissory note that said hogs were infected with a contagious disease." And: "Special Instruction No. 4. The court instructs the jury that the original payee named in the negotiable instrument is, to the same extent as a subsequent indorsee, entitled to the protection due to a *bona fide* holder against all defenses of which he had no notice at the time of receiving the paper, and that no failure or default of consideration is a defense against an innocent holder for value before maturity of a negotiable note in favor of the maker of said note." Both of these instructions were refused by the court, to which rulings the defendant reserved excep-

tions. The following special interrogatories were requested and submitted to the jury by leave of court, and the accompanying answers made thereto.

"Question. Did the plaintiff, J. Ten Cate, execute the note set up in the defendant's (M. E. Sharp's) answer and cross petition? Answer. Yes.

"Q. Did the defendant, M. E. Sharp, pay to J. P. Valentine, for the benefit of the plaintiff, John Ten Cate, the sum of $474, in consideration of the giving of said note? A. The $474 was paid to J. P. Valentine in full for the note given by J. Ten Cate to M. E. Sharp.

"Q. Did J. P. Valentine warrant the hogs sold to Ten Cate to be free from disease? A. Yes.

"Q. If you find that J. P. Valentine warranted said hogs to be free from disease, did the defendant, M. E. Sharp, have notice of such warranty? A. No."

The jury also returned a general verdict finding "the issues in favor of the plaintiff, and that he is not indebted to the defendant, M. E. Sharp, on account of the note in suit." Thereupon the defendant moved the court for judgment upon the special findings of the jury for the amount of his claim, which motion was overruled, and exceptions reserved. Whereupon the defendant filed his motion for a new trial because (1) the verdict was not based upon sufficient evidence, and (2) was contrary to law, which motion for a new trial was, upon the hearing by the court, sustained, and the general verdict of the jury returned in the cause set aside, and a new trial granted; and from this order the plaintiff in error appeals. Affirmed.

Opinion of the court by

McATEE, J.: It appeared in the testimony produced in the case, from the deposition of J. P. Valentine, that, upon making the contract with Ten Cate for the sale of

the hogs, he "informed Ten Cate that there was a stranger in the town [of Perry] called Sharp, who had money to invest, and had agreed to buy his [Ten Cate's] note. I also told Ten Cate that Sharp was a stranger to me, and I at no time represented to Ten Cate that Sharp had any interest whatever in the hogs, but I did tell Ten Cate that all that Sharp had to do with the matter was to get the interest on his money,"—and that "at no time prior to, or at the time of, or since the sale, have Sharp and I been partners in anything whatever, nor did I at any time make any representation to Ten Cate that a partnership existed between me and Sharp." And the jury expressly found, in their special finding of facts, that "the $474 was paid to J. P. Valentine in full for the note given by Ten Cate to Sharp," which finding was in response to the question, "Did the defendant, Sharp, pay to Valentine, for the benefit of the plaintiff, Ten Cate, the sum of $474, in consideration of the giving of said note?" Upon this evidence, and the special fiudings of fact by the jury, the court may well have had reason to doubt whether it was correct in refusing to instruct the jury that Sharp ought not to be bound by a warranty of the hogs of which he had no knowledge, and when the jury had expressly found that the money was paid to Valentine in full for the note given by Ten Cate to Sharp. The evidence in the case was contradictory as to whether any warranty had been given at all or not; the testimony upon this point being, as between Valentine and Ten Cate, flatly contradictory.

The law is well settled that where a verdict of the jury is founded upon the testimony of a witness directly contradicting another witness, and the trial court sets the verdict aside, the supreme court will not reverse the de-

cision or order of the trial court granting a new trial, and that when a new trial is granted the supreme court will only interfere when the trial court mistakes or misapplies some settled principle of law, or manifestly abuses its discretion, and that new trials are favored, instead of being disfavored, where any question can arise as to the correctness of the verdict. (*McCreary v. Hart*, 39 Kan. 218, 17 Pac. 839; *Field v. Kinnear*, 5 Kan. 138; *Owen v. Owen*, 9 Kan. 96; *Atyeo v. Kelsey*, 13 Kan. 216; *City of Sedan v. Church*, 29 Kan. 192; *Brown v. Railroad Co.*, 29 Kan. 189; *Railroad Co. v. Diehl*, 33 Kan. 426, 6 Pac. 566.)

And it has been further held that where a motion is made by the plaintiff for a new trial upon the grounds that the verdict is contrary to the law and the evidence, and the court errs in refusing to give certain instructions to the jury, and the court sustains the motion and grants a new trial, the rule of the court may be correct, although the preponderance of the evidence may be in favor of the defendant, and that trial courts are invested with a very large and extended discretion in the granting of new trials, and new trials ought to be granted whenever, in the opinion of the trial court, the party asking for a new trial has not in all probability had a reasonably fair trial, or in all probability obtained or received substantial justice, and although it might be difficult for the trial court or the parties to state the ground for such new trial upon paper so plainly that the supreme court could understand them as well as the trial court, and the parties themselves understood them, and that the supreme court will not reverse the ruling of the trial court granting a new trial, unless the supreme court can see, beyond all

—20

reasonable doubt, that the trial court has manifestly and materially erred with respect to some pure, simple, and unmixed question of law, and that except for such error the ruling of the trial court would not have been made as it was made, and that it ought not to have been so made, and that the supreme court will very seldom and very reluctantly reverse the decision or order of the trial court which grants a new trial.

It was said in *City of Sedan v. Church,* 29 Kan. 190, that it would be best for the other party, if he supposes he has a reasonably good case, to rely upon the new trial, and the verdict or finding to be obtained at the new trial, in preference to immediately taking the case to the supreme court; for that, where a new trial is granted, both parties are afforded another opportunity to have a fair and impartial trial upon the merits, but, where the new trial is refused, the parties are deprived of such opportunity, and no opportunity is given to either of the parties or to the court for the correction of any errors or mistakes which may have intervened during the original trial, and by such refusal irrevocable injustice may be done to the party asking for the new trial. (*City of Sedan v. Church,* 29 Kan. 191.)

The order of the court below granting a new trial will be affirmed.

All of the Justices concurring.