**BELT v. MORRIS.**

No. 22755.   June 29, 1934.

E. C. Fitzgerald, for plaintiff in error.

J. J. Smith and O. F. Mason, for defendant in error.

WELCH, J. This is an appeal from an order of the district court of Ottawa county, Okla., granting defendant's petition for new trial on the grounds of newly discovered evidence. The parties occupy the same rel-

ative position in this court as they occupied in the trial court, and will be referred to herein as plaintiff and defendant. The action was commenced by the filing of plaintiff's petition in the nature of ejectment. The petition was filed in February, 1922. The cause was tried to a jury on November 1, 1922, resulting in a verdict and judgment in favor of plaintiff for possession of 20 acres of land and for $40 damages, all as prayed by plaintiff. The real estate involved was a portion of the allotment of Mitchell Squirrell, deceased, a full-blood Cherokee Indian. The plaintiff, Mary Belt, is the daughter of one Lequake Kingfisher, and the issue was whether or not Mitchell Squirrell and Lequake Kingfisher were common-law man and wife, and whether Mitchell Squirrell acknowledged plaintiff as his child. The only evidence introduced at the trial was that of four witnesses in the form of depositions, and the oral testimony of a deputy court clerk as to certain records. The defendant was present by attorney both at the taking of depositions and at the trial of the cause, and cross-examined the witnesses.

After the trial and judgment rendered the defendant appealed to this court, which appeal was on September 6, 1923, dismissed. Within one year from the rendition of judgment the defendant filed his petition for a new trial upon the grounds of newly discovered evidence. This petition was supported by the affidavits and depositions of some three or four witnesses whose testimony related to the pedigree of Mary Belt, the plaintiff, and related to the relationship which existed between Lequake Kingfisher and Mitchell Squirrell during their lifetime. There was unusual delay in passing upon the defendant's petition for a new trial, occasioned in part at least by the disqualification of one trial judge and the intervening death of another. The petition was passed upon by the trial court on the 30th day of March, 1931, and was sustained and a new trial granted to the defendant. It is the trial court's action in sustaining such petition for new trial upon the grounds of newly discovered evidence of which plaintiff here complains.

One of the grounds urged for reversal of the action of the trial court is that the defendant failed to show proper diligence before the trial of the cause in the discovery of the evidence offered, and in this connection it is urged further that the evidence so offered as grounds for new trial is not such as would probably require a different verdict or decision from that rendered upon the trial. This court in Vickers v. Phillip Carey Co., 49 Okla. 231, 151 P. 1023, announced the following rules applicable to such motions.

"A rule of wide recognition regarding the granting of new trials on the ground of 'newly discovered evidence' exacts that the evidence fulfill the following requirements: (1) It must be such as will probably change the result if a new trial be granted; (2) it must have been discovered since the trial; (3) it must be such as could not have been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be merely cumulative to the former evidence; (6) it must not be to merely impeach or contradict the former evidence.

"Where the newly discovered evidence tends only to strengthen other evidence of the same kind to the same point, and is impeaching in its character, and is not such as would probably change the result if a new trial were granted, it is error, calling for a reversal, for the trial court to set aside the verdict of the jury and grant the moving party a new trial."

The Vickers Case, supra, is one of the comparatively early decisions of this court, and deals ably and somewhat exhaustively with the law applicable to the issues raised herein. Therein the court points out that applications for new trial based upon newly discovered evidence are not favored in law, and are regarded with suspicion and should be examined with caution. The court in that case, and numerous other decisions of this court, adhered to the rule that one is not entitled to a new trial upon a showing of newly discovered evidence, unless it is apparent the original judgment rendered was manifestly unfair and unjust, and that such newly discovered evidence would in all probability correct the probable apparent or manifest error of the original judgment. The rule is well stated in 46 C. J. 261, paragraph 234, as follows:

"The newly discovered evidence must be material or important to the moving party. And newly discovered evidence on or relating to a matter collateral to the issues is seldom ground for a new trial. It has been held not sufficient that the new evidence, had it been offered on the trial, might have changed the verdict, and that the legitimate effect of the newly discovered evidence must be such as to require a different verdict, and not merely such as might induce a jury to give a different verdict. * * * According to the weight of authority, it must be sufficiently important to make it probable that a different verdict will be returned on another

trial. A new trial may be denied where, if all the newly discovered evidence had been offered and received at the trial, the findings of the trial court would still have sufficient support in the evidence. According to some authorities, the new evidence must be of a decisive or conclusive character or such as to render a different result reasonably certain as to some material matter, although not necessarily of the whole case. Since probability of a different result is all that is usually required, a new trial will be granted where the court is convinced that the new evidence will probably result in a different verdict. A new trial will be granted more readily where the verdict appears to be against the weight of the evidence or where it is quite doubtful under the evidence, or where the verdict is unmistakably wrong. * * *

"It is not imperative that a new trial be granted, even though the evidence is newly discovered and, if presented to a jury, would justify a different verdict."

Such rule is supported by numerous authorities, a number of them being decisions of this court.

The court in the Vickers Case, supra, in discussing the objects to be accomplished and the considerations of the court in granting a new trial upon this ground, used the following language:

"There should be a reluctance in courts to disturb the verdicts of juries, unless in cases where it is manifest that either the law has been perverted, or mistaken, or that the losing party has not had a full and impartial hearing. In deciding motions or petitions for new trials on account of newly discovered evidence, courts have found it necessary to apply some stringent rules to prevent an almost endless mischief which a different course would produce. The reasons for this are obvious. As trial by jury is largely resorted to in the settlement of action at law, there is a clear policy to protect such trials from the imputation of injustice, and preserve for it the good opinion of those whose dearest rights may be subject to its decision. On this ground, mainly, applications for new trials, where injustice is supposed to have been done by verdicts, have been listened to by the courts as a necessary corrective of the accidents and mistakes that often attend a first trial, and as essential in many cases to attain the great end of litigation—a correct decision of causes according to their merits. This mode of preventing injustice was at a very early day resorted to by the courts; and though subject, in a great degree, to the discretion of the judges, it is, as far as practicable, to be regulated by a legal discretion on principles ascertained by adjudged cases."

And again in that opinion the court uses the following language:

"Newly discovered evidence, the purpose of which is to impeach a witness, is not a sufficient ground for a new trial, unless it be that it would probably change the result if a new trial were granted. If the new evidence tends to prove a distinct and material fact, and would probably produce a different result, a new trial, it is true, should be granted, although such evidence may also tend to impeach the adverse party or his witnesses. 14 Enc. Pl. & Pr. 810. We cannot say, after an examination of the newly discovered evidence, that, even though the testimony of the witnesses Miller and Sanders were produced at a new trial, it would probably result in a verdict for the defendant. Neither are we prepared to say that the verdict is unjust."

With these principles of law in mind, we have carefully examined the entire testimony introduced upon the original trial of the cause, and that presented upon defendant's petition for new trial. Upon the original trial plaintiff produced four witnesses, all of whom were aged Cherokee Indians, and all of whom testified clearly, emphatically, and without contradiction. Their testimony, if true, strongly and clearly shows that Mitchell Squirrell and Lequake Kingfisher were common-law husband and wife, and that Mitchell Squirrell acknowledged the plaintiff, Mary Belt, as his child, contributing to her support and maintenance both before and after her mother's death. All of these witnesses were cross-examined by the defendant's attorney, and their testimony remained clear and convincing and unshaken, and wholly fails to disclose any signs of fabrication or lack of knowledge regarding facts the witnesses assumed to relate. The witnesses offered by the defendant upon his petition for new trial were also aged persons who testified that they knew Mitchell Squirrell and Lequake Kingfisher during the times referred to in the plaintiff's testimony. Some of these witnesses appeared to know the parties a little more intimately than others, and some of them testified that the allottee and Lequake Kingfisher were not married, and that Mitchell Squirrell did not acknowledge the plaintiff as his child. Some of these witnesses were positive in their statements that plaintiff's mother and father were not married, and others of the witnesses merely testified that, although they knew Mitchell and Lequake and saw them often, that to their knowledge, or so far as they knew, there was no marriage, and that they never

heard of Mitchell Squirrell acknowledging plaintiff as his child.

Granting the evidence offered by the defendant all of the weight to be reasonably given it, it cannot be said that the same is more convincing than the evidence offered upon trial of the cause by the plaintiff, and in our view the same is, in fact, less convincing than the evidence offered by the plaintiff at the original trial. Plaintiff's evidence upon which the judgment is based is positive in its terms, and is such that it would not be disregarded by a court or jury except upon the theory that the same is untrue. The nature of defendant's proffered testimony is such that the witnesses could reasonably be mistaken, or the facts testified to by plaintiff's witnesses could have existed without knowledge thereof on the part of defendant's witnesses. Defendant's witnesses could be honest and truthful in their testimony to the effect that they knew the parties involved some 30 or 40 years prior to the giving of their testimony, and that Lequake and Mitchell were not married, and that Mitchell did not acknowledge plaintiff as his child, and still they might easily, by the nature of things, be wrong or mistaken as to these facts. This cannot be said, however, of the testimony given by plaintiff's witnesses, because they testified to positive facts which established plaintiff's cause to be true, unless such witnesses deliberately falsified their testimony. We do not mean to say that a new trial must be or should be denied merely because the new testimony would necessitate rejection of the opponent's testimony on the grounds that it is false, but we discuss such situation here in view of our conclusion that the newly discovered evidence offered is not such as would likely result in a verdict and judgment contrary to the one originally rendered if a new trial were granted, should the case be resubmitted to the jury on the entire evidence as now appears in the record. In our view a jury would be more nearly inclined to again render a verdict in favor of plaintiff than otherwise. That being true, the newly discovered evidence offered here fails to meet the rules of law above cited. We are not unmindful of the general rule that the trial court is vested with very large and extended discretion in the granting of new trials, Trower v. Roberts, 17 Okla. 641, 89 P. 1113, and as is stated in the Vickers Case, supra.

"It was said further, in answer by the court, that such is the general rule there is no doubt, but it should, and always in its application has been, limited to cases where there is a discretion reposed in the court below, or when the new trial is granted on the ground that the verdict is against the evidence, or because injustice has been done. Where the courts grant a new trial on the grounds of evidence not discretionary, and err in the application of a legal principle in so doing, such action will be corrected on appeal just as readily as if the motion had been overruled."

And further:

"And so we think the rule is and should be. The 'discretion' spoken of in the authorities is a legal discretion; a discretion to be exercised in discerning the course prescribed by the law, according to principles ascertained by adjudged cases. 'Judicial power, as contradistinguished from the power of the law, has no existence,' it was said by Chief Justice Marshall, in Osborn et al. v. Bank of United States, 9 Wheat. 738, 6 L. Ed. 204, 234. Courts are the mere instruments of the law, and can will nothing. Judicial power is not exercised for the purpose of giving effect to the will of the judge, but always for the purpose of giving effect to the will of the law. To one coming within the rule announced, a new trial should be given as a matter of right, not merely as a result of the exercise of the court's will. So, on the other hand, where the court grants a new trial, but in doing so disregards the rules of law controlling the exercise of the power, its action presents a question of law reviewable on appeal."

Furthermore, it is questionable here whether or not the defendant has brought himself within the due diligence rule. The action was filed in February, 1922, and summons served promptly, and the case was not tried until November of the same year. The record discloses that in the early stages of preparation for trial, the defendant knew in detail the theory of the plaintiff's case, and in fact knew the details of all of the evidence to be offered on the part of plaintiff, being present at the taking of depositions and having carefully cross-examined all of the plaintiff's witnesses. At the trial of the cause he offered no testimony of any character, simply demurring to plaintiff's evidence. The only thing he offers to show diligence is his bare statement in his petition for new trial, which we quote as follows:

"That the sole right of recovery of said plaintiff, depended on her showing that she was the child of Mitchell Squirrell. That at the trial of said case the defendant introduced no evidence on said proposition either affirming or denying said proposition for the reason that they believed that the aforesaid deponents were testifying to the truth rela-

tive to the said plaintiff being the daughter of said Mitchell Squirrell. Defendant employed party at great expense to gather facts as to the relationship of Mary Belt to Mitchell. Squirrell, but was unable after extensive travel. and inquiry to find evidence against claim of plaintiff and is without fault in the premises."

He introduced no testimony whatever on this point which might in any way strengthen his statement in the petition. Such statement is more nearly a conclusion by the pleader that he has been diligent, than a statement of facts from which a court might conclude that he had acted diligently in the preparation of his defense in the first instance. The very fact that the defendant, in cross-examining plaintiff's witnesses, made no inquiry of any of them as to the names or whereabouts of other persons who also lived in the community and were acquainted with the Squirrells and Kingfishers during the period in question of whom he might inquire further, would appear within itself to argue some lack of diligence.

"That evidence was discovered soon after the trial by systematic inquiry or search usually indicates that proper diligence was not exercised to discover the evidence before the. trial, but may not so indicate where the party could not reasonably be expected to make inquiry under the circumstances. * * * As a rule applicant for a new trial must have made reasonable inquiry, where necessary, before the trial, to learn what persons were present at the time a matter in controversy occurred. He must have been reasonably diligent to find and inquire of persons known or supposed to have participated in an act, transaction, or conversation in controversy, or to have had some connection therewith or knowledge thereof, or to have been present at the time and place of its occurrence, as to their knowledge thereof. * * *" 46 C. J. 255.

Although this lack of diligence might not be so readily apparent as to alone justify the appellate court in reversing the trial court in this case, we have considered this weakness in defendant's contention here as worthy of mention.

In view of the conclusions reached on the questions discussed, which are determinative of the issues here, we do not consider the other questions which have been presented.

The action of the trial court is reversed and its order granting a new trial upon the grounds herein considered is vacated.

RILEY, C. J., and SWINDALL, McNEILL, and BAYLESS, JJ., concur.