## ARMSTRONG v. CHICKASHA COTTON OIL CO.

No. 35680.

Supreme Court of Oklahoma.

July 7, 1953.

Allen & Allen, Tulsa, for plaintiff in error.

Manatt, Knight & Knight, Tulsa, for defendant in error.

BLACKBIRD, Justice.

Defendant in error, as plaintiff, sued plaintiff in error as defendant, for the balance it claimed he owed it on a feed bill. Verdict was for the defendant, but plaintiff's motion for new trial was sustained and defendant has herein appealed therefrom. Our continued reference to the parties will be by their trial court designations.

The trial court's reason for granting the new trial as set forth in his order sustaining plaintiff's motion therefor, is "that the verdict is wrong and not sustained by the evidence, and further that the court could not conscientiously approve said verdict as the thirteenth juror." Defendant maintains that the verdict is sufficiently supported by the evidence that there was no legal basis for granting a new trial and that the court's action in so doing constituted an abuse of discretion.

According to the undisputed evidence, defendant had known plaintiff's manager, Coats, and purchased feed for his livestock through him from another company for several years previous to Coats' employment as plaintiff's manager. At the time the events leading to this controversy occurred, defendant had also purchased some feed through Coats from plaintiff. The truck driver who had been doing plaintiff's hauling was no longer available and as defendant had a truck suitable for the hauling of feed, Coats engaged him to deliver feed for his company. The terms of this employment were arranged and discussed enroute to Muskogee where Coats accompanied defendant on the first trip or "haul" that defendant made for said plaintiff company. It is undisputed that this oral agreement between defendant and Coats was to the effect that defendant's hauling or trucking services for plaintiff were to be paid for in feed that it handled and had for sale. The conflict in the evidence related to the basis upon which defendant's services were to be rendered. The latter's testimony was

to the effect that he was to have all the feed needed for his dairy herd, while plaintiff's theory and evidence was to the effect that his feed bill was to be credited for his services at a certain rate or schedule for each truck trip he made for it. It is indicated that this rate was probably ten cents per mile.

At the trial it was stipulated that the value of the feed defendant had received from plaintiff was $864.60. Credits given defendant for his trucking services amounted to $363.54. The balance of $501.06 was the amount plaintiff sued for herein.

The only witness besides Coats and the defendant was his former counsel, a Tulsa attorney, engaged by defendant when summons was first served upon him at the commencement of this action. It appears that in the course of her employment this attorney, with the assistance of records furnished her both by the defendant and plaintiff, attempted to arrive at a proper accounting between the parties and when she had arrived at an opinion as to what defendant should do in adjusting the matter and he refused to take her advice, she withdrew from the case before the trial. Thereupon, defendant employed his present counsel. This attorney testified that during her employment by defendant he never mentioned his present claim as to the nature of his agreement with Coats, that is, that his hauling was to offset the entire cost of all feed he might procure from plaintiff for his herd, which, at the time of the trial, consisted of 19 cows, a few of which were always dry and not being milked.

Coats' testimony was to the effect that he did not know how many cattle defendant was feeding and he and his counsel infer that it is inconceivable and contrary to all good business acumen and practice that any feed merchant would, under the circumstances, have made an unqualified agreement to let defendant have all the feed he needed in exchange for his trucking, without any specification as to how many cows were to be fed or how much trucking defendant was to do, and without taking into consideration possible fluctuation in feed prices. Also this would seem to be inconsistent with the unrefuted testimony of Coats that defendant tried to get him to furnish the feed at the wholesale price, but Coats refused. Also, besides the record plaintiff kept of his hauling, defendant testified that he kept a record in "a little black book" of all the trips he made for plaintiff. Although he said this was "just for my own records" he did not explain why the keeping of such records would have been necessary or advisable by either party to the contract, if its terms had been as testified to by him. In support of his version of the agreement, defendant stated that usually, after making a haul for plaintiff, he took home with him, "if it wasn't too late in the evening", the equivalent in feed of the value of his services for the day, but he did not deny that he signed sales tickets for each of these bills of feed and the evidence indicates he procured feed by such signing on some days or occasions when he had done no hauling for plaintiff. It will be seen from the above that there was a direct and irreconcilable conflict between the testimony of plaintiff's manager and the defendant as to the terms of their agreement. Under such circumstances we cannot say that the trial judge abused his discretion in setting aside the jury's verdict for defendant and granting plaintiff a new trial.

Beginning with the early case of Ten Cate v. Sharp, 8 Okl. 300, 57 P. 645, this court has consistently refused to interfere with the trial court's ruling in such a situation. There it was held:

"Where the verdict of a jury is founded upon the testimony of one witness, who was directly contradicted by another, and the trial court sets the verdict aside, the supreme court will not reverse the decision or order of the trial court granting a new trial, and when a new trial is granted the supreme court will only interfere when the trial court misapplies or mistakes a well-settled principle of law, or obviously abuses its discretion; and new trials are favored, instead of being disfavored, where any question can arise as to the correctness of the verdict."

In Walden v. Gardner, 56 Okl. 774, 156 P. 643, this court held:

"The discretion of the trial court in granting a new trial is so broad that its action in so doing will not be disturbed on appeal unless the record shows clearly that the court erred in its view of some pure and unmixed question of law, and that the order granting a new trial is based upon such erroneous view of the law."

See also Davis v. Stillwell, 32 Okl. 757, 124 P. 74; St. Louis & S. F. Ry. Co. v. Fisher, 37 Okl. 751, 133 P. 41; Carr v. Wichita State Bank & Trust Co.; 118 Okl. 136, 246 P. 1088; Nichols Transfer & Storage Co. v. Lumpkin, 180 Okl. 350, 69 P.2d 640. In Kurn v. Thompson, 183 Okl. 185, 80 P.2d 578, this court, after reviewing many previous cases involving this question concluded that where the evidence is conflicting, it is the duty of the trial court to weigh it and if it appears that the jury could have rendered a verdict for either party, or in his opinion, should have held for the opposite party, and he cannot conscientiously approve the verdict or permit it to stand, then it is his duty to set it aside and grant a new trial. There, the rule was enunciated in the following words:

"The discretion of the trial court in granting a new trial is so broad that its action in so doing will not be disturbed on appeal unless the record shows clearly that the court erred in its view of some pure unmixed question of law or has acted arbitrarily or capriciously."

In the above case it was also pointed out that every presumption will be indulged in favor of the correctness of such a ruling. Other more recent cases applying the same principle are Harper v. Pratt, 193 Okl. 86, 141 P.2d 562; Belford v. Allen, 183 Okl. 261, 80 P.2d 676; Downing v. Mealy, 204 Okl. 247, 228 P.2d 1008; Fisher v. Hopkins, 205 Okl. 134, 235 P.2d 944.

In Harper v. Pratt, supra, this court held:

"The judge who presides at the trial of a case hears the testimony of the witnesses, observes their demeanor, and has a full knowledge of the pro-

ceedings had and done during the process of the trial, is in a better position to know whether or not substantial justice has been done than any other person. Where such judge sustains a motion for a new trial, it will require a clear showing of manifest error and an abuse of discretion before the appellate court will be justified in reversing such ruling of the trial court.

"As the granting of a new trial only places the parties in a position to have the issues between them again submitted to a jury or court, the showing for reversal should be much stronger where the error assigned is the granting of a new trial than where it is the refusal."

See also Y & Y Cab Co. v. Ford, Okl., 252 P.2d 430. And to the above, we might add the following quotation from Lee v. Baltimore Hotel Co., 345 Mo. 458, 136 S. W.2d 695, 699, 127 A.L.R. 711: "* * * the trial judge knew what kind of a jury he had * * * and what was the atmosphere of the trial."

As indicated in Kurn v. Thompson, supra, judicial discretion does not mean a mere whim or caprice but means an honest attempt, in the exercise by the judge of his duty and power, to see that justice is done to establish a legal right. Lee v. Baltimore Hotel Co., supra.

We find no substantial variance between this definition and the one given by this court in Belt v. Morris, 168 Okl. 528, 34 P.2d 581, 582, cited by defendant. That case lends him no support here because it involved the granting of a new trial on the ground of "newly discovered evidence" which is governed by the six requirements named therein that definitely restrict the granting of a new trial on that ground.

Judgment of the trial court is hereby affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, CORN, DAVISON, O'NEAL and WILLIAMS, JJ., concur.

ARNOLD, J., concurs in conclusion.