C. D. MITCHELL, Administrator with the Will Annexed of the Estate of W. A. Graham, Deceased, Plaintiff in Error,

v.

R. J. LINDLY, Defendant in Error.

Mac Q. WILLIAMSON, Earl Ward, Bob Chambers, Co-Trustees of the W. A. Graham Public Improvements Trust Estate, Plaintiffs in Error,

v.

R. J. LINDLY, Defendant in Error.

Nos. 38643, 38651.

Supreme Court of Oklahoma.

May 10, 1960.

A. C. Wallace, John R. Wallace, Ben T. Owens, Miami, for plaintiffs in error, Mac Q. Williamson, Earl Ward, Bob Chambers, Co-Trustees of W. A. Graham Public Improvements Trust Estate.

Ralph B. Brainard, Claremore, for plaintiff in error, C. D. Mitchell, with the Will Annexed of Estate of W. A. Graham, Dec'd.

Hunt & Lock, by Riley Q. Hunt, Jay, for defendant in error.

BLACKBIRD, Justice.

The controversies involved in the above styled and numbered appeals are sequels to Ward v. Lindly, Okl., 294 P.2d 296, in which this court affirmed a district court judgment, in favor of R. J. Lindly, cancelling a deed purporting to convey from his grandmother and predecessor in title, Nan Bledsoe, to the late W. A. Graham, a certain Pryor Creek, Oklahoma, lot, on which Graham had constructed a duplex apartment building. In that action instituted by Lindly, as plaintiff, against the defendants, Earl Ward, C. D. Mitchell and Baylis L. Graham, as co-administrators of the W. A. Graham Estate, Lindly sought the property's rental value for the years 1952–1954, as well as its possession, cancellation of the aforesaid deed, and the quieting of his title, but the cited decision settled only Lindly's right to the property,

without any further attempt at fixing an accounting between the parties as to the past income from the property, or adjusting, reconciling or resolving any claims either might have upon such funds.

After Ward v. Lindly, supra, became final, Lindly and C. D. Mitchell, the then sole acting administrator of the W. A. Graham Estate, agreed upon a settlement of such undetermined issues in the manner reflected by the following pertinent provisions of a stipulation, which was duly executed by both parties and their attorneys, on April 2, 1956, and filed in the action:

"* * * 3. That the defendants have made a claim against said property for the value of the improvements placed thereon, and that the plaintiff has made a claim against the defendants for the rental value of said property during the period of time the property was and has been in the possession of W. A. Graham and the defendant Administrators.

"4. That it is the plaintiff's contention that the value of the improvements, expenses, taxes, and all assessments against said property has been more than offset by the rentals collected thereon, to the extent that the defendant Administrators now owe the said plaintiff the sum of Four Thousand Three Hundred One and 55/100 ($4,301.55) Dollars.

"5. That it is the contention of the defendants herein that the rental value of said premises up-to-date exceeds the cost of the improvements, expenses, taxes and special assessments by the sum of only Two Thousand One Hundred Twenty Seven ($2,127.00) Dollars.

"6. It is understood, stipulated and agreed by and between the parties hereunto that *in order to save the Graham estate expensive, burdensome and bothersome and expensive litigation,* that it is to the best interest of all parties to this suit to settle said claim in order that this matter may be finally

disposed of, and in accordance therewith, the parties hereunto by negotiation have arrived at a figure of Two Thousand Nine Hundred ($2,900.00) Dollars to be paid by the defendant to the plaintiff, together with the actual physical delivery of said property in full settlement of all claims, demands, or rights in law or in equity.

"7. It is, therefore, stipulated and agreed by and between the parties hereunto that the Court may, without further notice, render judgment in favor of the plaintiff and against the defendant for the sum of Two Thousand Nine Hundred ($2,900.00) Dollars, to be immediately and forthwith paid by the defendant to the plaintiff in full and complete settlement and satisfaction of all claims or demands against the defendant of any nature whatsoever, and that said defendant shall immediately and forthwith deliver to the plaintiff the real property and premises, together with all the improvements, appurtenances and hereditaments thereunto belonging to the plaintiff, and that when this stipulation is executed by the parties hereunto and approved by the District Court of Mayes County, Oklahoma, and judgment is rendered in accordance herewith, that this stipulation, the judgment of the Court, and the payment of the sum of money, in the amount of Two Thousand Nine Hundred ($2,900.00) Dollars by the defendant to the plaintiff, and the actual physical delivery of the real property and premises is made by the defendant to the plaintiff, and the payment of the Court costs in this action by the defendant, that this stipulation and the judgment rendered hereunder operate as a final and complete release, satisfaction and adjudication of all claims or demands by the plaintiff against the defendants and by the defendants against the plaintiff, it being the desire of the parties hereunto by the payment of the Two Thousand Nine Hundred ($2,900.00) Dollars to the plaintiff, the delivery of the property and the payment of the Court costs in this action *to finally and for all time compromise, settle and dispose of* all claims or demands of one party against the other pertaining to the real property hereinabove described and this cause of action." (Emphasis ours).

On April 3, 1956, the district court, hereinafter referred to as the trial court, entered its judgment, in accord with the above stipulation, fixing Lindly's monetary recovery against Administrators Ward and Graham, as well as Mitchell, referred to therein collectively as "defendants", at the sum of $2,900. According to an undisputed statement in the briefs filed herein, Mitchell then satisfied said judgment by paying Lindly $2,900 of the Graham Estate's funds in his possession.

In the meantime, in the probate proceedings governing the administration of the W. A. Graham Estate, the majority of said estate, by county court order of April 7th, 1954, had been directed to be distributed to the trustees of the W. A. Graham Public Improvements Trust Estate, as more fully appears from State ex rel. Williamson v. Longmire, Okl., 281 P.2d 949, and Mitchell v. Williamson, Okl., 304 P.2d 314.

On June 29, 1956, said trustees instituted one of the proceedings herein dealt with, by filing their motion to vacate the above described agreed, or consent, judgment of April 3, 1956.

On November 27, 1956, C. D. Mitchell, the administrator, filed his separate motion to vacate the same judgment. The trial court entered separate judgments overruling these motions. From the judgment overruling their motion, the co-trustees of the W. A. Graham Public Improvements Trust Estate, appearing in the appeal docketed in this court as No. 38651, have perfected said appeal; and from the judgment overruling his motion, Mitchell, the Graham Estate's administrator, has perfected, as plaintiff in error, the separate appeal docketed in this court as Cause No. 38643.

By Court-approved stipulation of the parties, these appeals were consolidated for presentation to this court, and will herein be considered as consolidated for decision. Our further reference to the plaintiffs in error and defendant in error in both appeals will be by the designations "movants" and "respondent", respectively, unless otherwise indicated.

As one of the reasons we should reverse the judgment denying their motion to vacate the hereinbefore described judgment of April 3, 1956, the movants Williamson, Ward and Chambers say that it is void, as contrary to the provisions of our Occupying Claimants Statute (Title 12 O.S.1951 § 1481) to the general effect that before depriving an occupying claimant, or his heirs, of property he, or they, have improved, they should be paid the full value of all such "lasting and valuable" improvements and the taxes paid by them, with interest. They say that from reading said 1956 judgment, and the stipulation on which it was based, it is apparent that both Lindly and Mitchell made their settlement under the erroneous impression that in adjusting their respective claims, Lindly was entitled to have the rental value of the entire property, as improved, offset against the Graham Estate's claim for the value of the duplex and other improvements the testator Graham had made on the lot; whereas, under the correct interpretation of the law, Lindly was entitled to have *only* the rental value of the bare lot (unimproved as Graham acquired it) subtracted from the Estate's claim for the value of the improvements (citing "19 C.J., sec. 377").

The movant Mitchell, unlike the above-mentioned co-trustees, does not specifically charge that the agreed judgment of 1956 was void, but he joins them in representing that the stipulation for said judgment was entered into under the aforesaid misconception of the law entertained by his then attorney, upon whose advice he relied, as to the rental value Lindly was entitled to have offset against the Graham Estate's claim. Mitchell also invites our attention to the record of the hearing on his motion, as revealing from the trial judge's remarks

at the time of his ruling thereon, that his decision, or judgment, was affected "by matters not germane to the issues then before the court * * *".

█ As to Mitchell's last described argument, this court is rather firmly committed to the rule that a correct judgment, although based upon wrong reasons, will not be set aside on appeal. See Chaney v. Reddin, 201 Okl. 264, 205 P.2d 310, 8 A.L.R. 2d 337, and other cases digested in 2A Okl.Dig., under Appeal and Error, █ █ Under this rule, if the trial court's judgments are correct on any theory they will be affirmed, at least where, as here, they are not inconsistent with the position of the successful party.

Respondent contends, among other things, that the Occupying Claimants Statute is not applicable to the situation herein presented. He argues, in effect, that the parties to the stipulation, upon which the questioned judgment was based, were free to negotiate any settlement, upon which they could agree, without regard to, or an adjudication of, all their strict legal rights with reference to an accounting between them; that the settlement was agreed upon in the face of a possible loss to the Graham Estate of some $16,000; and that whether or not the 1956 judgment should be vacated was within the sound judicial discretion of the trial court. Respondent also charges that, despite the opportunity extended to the Trustees of the Graham Public Improvements Trust, to object to, or resist, the settlement he and Mitchell made, before it was approved by, and incorporated in, said judgment, they chose to stand by and not voice any objection thereto until more than 90 days after it was "fully accomplished and completed * * *".

We think the apparently agreed fact that the 1956 judgment was paid, or satisfied, before either of the motions to vacate it were filed, has a significance of prior importance to considerations pertaining to whether or not mutual mistake of law, as distinguished from mutual mistake of fact, constitutes ground for vacating such a

judgment. In the latter connection notice Kingsbury v. Brown, 60 Idaho 464, 92 P.2d 1053, 1057, 124 A.L.R. 149, 154; Doll v. Doll, 206 La. 550, 19 So.2d 249, 255, quoting from In the Succession of Williams, 168 La. 1, 121 So. 171; Murray v. Willoughby, 133 Ga. 514, 66 S.E. 267, 268, 269; Blair v. Askew-Jones Lumber Co., 186 Ark. 687, 55 S.W.2d 78; 49 C.J.S. Judgments §§ 330b, 364, 365; 30A Am. Jur., "Judgments", secs. 638, 664. If, when a judgment has been fully satisfied, it is no longer a judgment, it is doubtful if it is a proper subject for the application of our statutes relating to the vacation of judgments (by motion or petition filed in the action in which they were rendered), especially when, as here, the satisfaction is not claimed to have been involuntary or made under any mistake, or misapprehension, of fact. In the latter connection, see the cases cited in the annotation, 3 Ann.Cas. 19. See also Pardue v. Absher, 174 N.C. 676, 94 S.E. 414, 415. In Sweeney v. Black River Lumber Co., 4 La.App. 244, it was said:

"The patent and fatal error into which counsel have fallen is that they have overlooked the fact that once a judgment has been paid and fully satisfied according to its terms it becomes extinguished, a dead thing, and is no longer a judgment in the sense that a judgment fixes and finally establishes the rights and obligations of the parties thereto.

\* \* \* \* \* \*

"The written instrument, therefore, usually referred to as a "judgment" is nothing more than a statement or the evidence of the court's fiat or decree fixing the rights of one of the parties and the obligations of the other.

*"Therefore, when the rights and benefits, as fixed by the court, of one of the parties have been accepted, and the obligations of the other have been discharged, the judgment of the court ceases to exist."* (Emphasis ours.)

Notice also the court's reasoning in Stilwell v. Stilwell, 81 Hun, N.Y., 392, on page 394, 30 N.Y.S. 961, on page 962.

As to the respondent's argument to the effect that this court will not disturb trial court orders on applications to vacate judgments, unless same constitute abuses of sound judicial, or legal, discretion (citing Jaggers v. Hobbs, 198 Okl. 181, 176 P.2d 828, and other cases) the latter term has been defined as:

"\* \* \* a discretion \* \* \* in discerning the course prescribed by the law, according to principles ascertained by adjudged cases." Belt v. Morris, 168 Okl. 528, 34 P.2d 581, 584.

In view of the "principles ascertained by (the above) adjudged cases", the trial courts' orders and/or judgments herein considered cannot be held to constitute abuses of sound legal discretion. Our views of the situation presented by these appeals render it unnecessary to discuss other arguments advanced for reversal. The judgments appealed from are therefore affirmed.